Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
Tel - (845) 876-7500
Fax - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQUELYN TUCKER,<br><br>                        Plaintiff,<br><br>       v.<br><br>TOWN OF HYDE PARK, MARTIN MONACO, individually and in his official capacity, and PAUL CACCIA, individually and in his official capacity,<br><br>                        Defendants. | COMPLAINT<br><br>Civil Action No.<br><br>JURY TRIAL DEMANDED |

1. Plaintiff complains, upon knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, as follows.

**Nature of the Case**

2. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the New York State Human Rights Law ("NYSHRL"), New York State Executive Law § 290, et seq. Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against on the basis of Plaintiff's sex/gender (female) and retaliated against by Plaintiff's employers solely for objecting to this discrimination.

**Jurisdiction and Venue**

3. Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3).

4. This Court has supplemental jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), as it is a judicial district in the State (New York) in which the unlawful employment practices are alleged to have been committed.

**Procedural Prerequisites and History**

6. Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

7. Plaintiff received a Notice of Right to Sue ("Notice") from the EEOC, dated May 13, 2022 with respect to the herein charges of discrimination.

8. This Action is being commenced within ninety (90) days of receipt of said Notice.

**Parties**

9. At all times material, Defendant Town of Hyde Park ("Hyde Park") was a municipality located in Dutchess County, New York.

10. At all times material, Defendant Hyde Park was engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e.

11. At all times material, Defendant Hyde Park had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year.

12. At all times material, Defendant Hyde Park was Plaintiff's employer under Title VII.

13. At all times material, Defendant Hyde Park was Plaintiff's employer under the NYSHRL.

14. At all times material, Defendant Martin Monaco was an employee of Defendant Hyde Park.

15. At all times material, Defendant Monaco was Plaintiff's supervisor and had supervisory authority over Plaintiff.

16. At all times material, Defendant Monaco had the power to hire Plaintiff.

17. At all times material, Defendant Monaco had the power to fire Plaintiff.

18. At all times material, Defendant Monaco had the power to demote Plaintiff.

19. At all times material, Defendant Monaco had the power to promote Plaintiff.

20. At all times material, Defendant Monaco had the power to directly affect the terms and conditions of Plaintiff's employment.

21. At all times material, Defendant Monaco had the power to direct Plaintiff's daily work activities.

22. At all times material, Defendant Paul Caccia was an employee of Defendant Hyde Park.

23. Defendant Monaco and Defendant Caccia are collectively referred to herein as "Individual Defendants."

24. Defendant Hyde Park and Individual Defendants are collectively referred to herein as "Defendants."

## Facts

25. On or around August 22, 2008, Plaintiff began working as a Police Officer for Defendant Hyde Park.

26. On or around February 7, 2019, Defendant Monaco told Plaintiff and police department employee Tracy Merritt that he has fantasized about Plaintiff and another female police officer, Sarah Hutchinson, engaging in sexual activities.

27. Plaintiff objected to this sexist behavior by telling Defendant Monaco that his comments were offensive and inappropriate.

28. In so doing, Plaintiff engaged in protected activity under Title VII and the NYSHRL.

29. However, Defendant Monaco continued to luridly describe his sexual fantasies about Plaintiff to Plaintiff -- even after Plaintiff informed him that his comments were offensive and inappropriate.

30. On or around February 12, 2019, during a personal discussion with Ms. Merritt, Plaintiff stated that Plaintiff's daughter's dance instructor, a woman referred to as "Mrs. G," had previously dated Plaintiff's husband.

31. After hearing this, Defendant Monaco told Plaintiff, in sum and substance, that her husband "must have incredible fantasies about Mrs. G" and Plaintiff "engaged in sexual activities together."

32. Defendant Monaco ignored Plaintiff's protests and continued to make sexually oriented statements about Mrs. G and Plaintiff, asking if Plaintiff had engaged in a "three-some" with Mrs. G and Plaintiff's husband.

33. On or around February 15, 2019, Plaintiff complained about the gender-based hostility in the workplace to Sergeant Bradley Moore.

34. Upon information and belief, Sgt. Moore took no formal action on Plaintiff's complaint.

35. On or around April 23, 2019, while Plaintiff and a female colleague were practicing defensive tactics at a training class, Lieutenant Caccia said, in sum and substance: "That's so hot, it gave me a boner.  Does anyone have that recorded so I can watch it later?"

36. Back at the Defendant Hyde Park police station later the same day, Defendant Caccia said to Plaintiff and Officer Hutchinson, in the presence of other employees, that, in sum and substance: "I'm not going to lie, you two fighting really turned me on.  Sorry, it's just a guy thing."

37. Plaintiff was outraged at this discriminatory comment.

38. In or around June 2019, Defendant Caccia said to Plaintiff, in sum and substance, "I appreciate you.  Especially thinking about you and training," a clear reference to Plaintiff's defense training with Officer Hutchinson that Defendant Caccia had said "gave me a boner."

39. On or around November 14, 2020, speaking directly to Plaintiff, Defendant Monaco referred to a female police officer employed by the Fishkill police department as having, in sum and substance, "nice breasts."

40. Plaintiff was stunned and furious that Defendant Monaco continued making these outrageous comments even after being told that they were inappropriate.

41. Although a colleague heard the comments and told Defendant Monaco that they were creepy, Defendant Monaco nonetheless continue to comment on this woman's breasts.

42. On or around November 24, 2020, Plaintiff complained again to management about the gender-based hostility in the workplace, this time directly to the Town's compliance officer.

43. In response, Defendant Hyde Park purported to investigate Plaintiff's complaints.

44. During the course of the alleged investigation, an attorney -- ostensibly investing matters on behalf of Plaintiff -- asked Plaintiff what she was wearing during the defensive tactics training exercise, suggesting that Plaintiff had somehow "asked for it" by wearing suggestive clothing.

45. Plaintiff was furious and felt betrayed.

46. On or around December 14, 2020, Defendant Hyde Park provided copies of its findings (the "Report," dated December 11, 2020) to Defendant Caccia, Defendant Monaco, and Plaintiff.

47. The Report concluded that Defendant Monaco had engaged in sexual harassment against Plaintiff.

48. The Report concluded that much of the statements and conduct describe above were "unwelcome, offensive statements of a sexual nature towards Officer Tucker [and that Defendant Monaco] continued to offensively comment on Officer Tucker's sexual experiences and his own sexual fantasies after Officer Tucker told him that his statements were offensive and inappropriate . . ."

49. The Report also concluded that Defendant Monaco's actions violated Defendant Hyde Park's policy against sexual harassment, stating:

> Based on our findings that Sgt. Monaco made unwelcome, offensive statements of a sexual nature towards Officer Tucker on two occasions, and continued to offensively comment on Officer Tucker's sexual experiences and his own sexual fantasies after Officer Tucker told him that his statements were offensive and inappropriate, the panel finds that Sgt. Monaco's actions violated the Defendant Hyde Park's policy against sexual harassment.

50. Despite acknowledging "the seriousness of Sgt. Monaco's acts of sexual harassment," the Report merely recommended that Defendant Monaco be required to attend sexual harassment prevention counseling.

51. The Report claimed that the "the panel would have recommended that Sgt. Monaco be referred for disciplinary action. However, because the acts of sexual harassment occurred more than eighteen months ago, disciplinary charges would be untimely under the civil service law."

52. The Report arrived at this conclusion by contending that Defendant Monaco's comments that another police officer had "nice breasts," were not sexual harassment -- despite being made to Plaintiff by Defendant Monaco while on the clock -- because they were about the breasts of another police officer employed by a different municipality.

53. The Report also stated that because Plaintiff "expressed discomfort in the possibility of reporting to Sgt. Monaco, the panel recommends that Chief Robert Benson be notified of this finding and asked to undertake whatever action he deems reasonable and appropriate to minimize Sgt. Monaco's supervision of Officer Tucker and to prevent future incidents of sexual harassment."

54. The Report also addressed Sgt. Moore's failure to act upon Plaintiff's February 2019 complaints of sexual harassment, stating that this was "at variance with the Town's sexual harassment policy which requires all supervisors and managers 'who receive a complaint or information about suspected harassment' to promptly report the suspected sexual harassment to the Town Compliance Officer."

55. As to Defendant Caccia, the Report concluded that Defendant Caccia "made the sexually oriented statements as alleged in the Officer Tucker's complaint."

56. However, the Report also merely recommended that Defendant Caccia be required to attend sexual harassment prevention counseling.

57. When Plaintiff complained of the discrimination she experienced, she hoped Defendant Hyde Park would protect her right to be free from discrimination.

58. As a result, Plaintiff felt betrayed by Defendants Hyde Park's refusal to take disciplinary action against Defendant Monaco or Defendant Caccia.

59. Indeed, on or around December 17, 2020, Plaintiff made this clear to Defendants when she responded to the Report's findings.

60. On or around December 18, 2020, Defendant Monaco, through counsel, sent a letter to the Town Board and Town Supervisor, in which he objected to the Report's findings.

61. In the Letter, Defendant Monaco's counsel belittled Defendant Monaco's outrageous behavior, writing:

> The fact is Sergeant Monaco believes that he did not make the statements attributed to him, but out of an abundance of caution he advised that he had no recollection. After more than twenty-one months who would recall such frivolous and sophomoric comments. No one would, unless there was an ulterior motive.

62. Beginning after the Report was issued, Defendant Monaco has demonstrated and continues to demonstrate an obviously more confident attitude and has made numerous statements applauding his own success at getting away with the challenged conduct.

63. For example, Defendant Monaco has mocked and derided the Report and its findings, stating to coworkers that they were not allowed to talk about "hot sauce" at work, or reference "farts" at work because, he stated mockingly, this is "too offensive" to be in the workplace.

64. Defendant Monaco has stated since the Report was issued that he was proud that nothing was being done to him for his sexual harassment in the workplace, and that no matter what he does "nothing will happen anyway" or words to that effect.

65. In or around late December 2020 and January 2021, Plaintiff, Defendant Monaco, and Officer Berkowitz rotated the field training a new police officer.

66. This was soon after Defendant Monaco was told to avoid unnecessary interaction with Plaintiff lest he sexually harassed Plaintiff again.

67. During this time Defendant Monaco has repeatedly made outrageous statements to the new Officer that directly contradicted Plaintiff's directives to the new Officer.

68. For example, Defendant Monaco menacingly and loudly said to Plaintiff and the new Officer that he should "shoot to kill."

69. Defendant Monaco did so to retaliate against Plaintiff for complaining of his discriminatory behavior.

70. Defendants Defendant Hyde Park knew or should have known of the discriminatory and retaliatory conduct and failed to take corrective measures within their control.

71. But for Defendant Monaco's position at Defendant Hyde Park, Defendant Monaco would not have been able to subject Plaintiff to the discriminatory and retaliatory treatment alleged above.

72. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful and retaliatory conduct.

73. Defendants retaliated against Plaintiff because Plaintiff objected to Defendant Monaco's discriminatory and unlawful conduct.

74. Defendants created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

75. The above are just some of the ways Defendants regularly and continually harassed, discriminated against, and retaliated against Plaintiff while employing Plaintiff.

76. Defendants treated Plaintiff this way because of Plaintiff's sex/gender.

77. Defendants acted intentionally and intended to harm Plaintiff.

78. Defendants unlawfully discriminated against, retaliated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights and emotional distress.

79. Plaintiff was qualified for her position.

80. Plaintiff also suffered emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

81. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

82. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### First Cause of Action for Discrimination Under Title VII

83. Plaintiff restates the foregoing allegations.

84. Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e–2(a), titled "employer practices," provides that:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

85. Defendant Hyde Park violated the section(s) cited herein as set forth.

## Second Cause of Action for Retaliation
## Under Title VII

86. Plaintiff restates the foregoing allegations.

87. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

88. Defendant Hyde Park violated the sections cited herein as set forth.

## Third Cause of Action for Discrimination
## Under the New York State Executive Law

89. Plaintiff restates the foregoing allegations.

90. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

91. Defendants violated the section(s) cited herein as set forth.

## Fourth Cause of Action for Discrimination
## Under the New York State Executive Law

92. Plaintiff restates the foregoing allegations.

93. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

94. Defendant Monaco violated the section(s) cited herein as set forth.

95. Defendant Caccia violated the section(s) cited herein as set forth.

### Fifth Cause of Action for Retaliation
### Under the New York State Executive Law

96. Plaintiff restates the foregoing allegations.

97. New York State Executive Law § 296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

98. Defendants violated the section(s) cited herein as set forth.

### Jury Demand

99. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et. seq., and the New York State Human Rights Law, New York State Executive Law § 290, et seq., in that Defendants discriminated against Plaintiff based on Plaintiff's sex/gender and retaliated against Plaintiff for complaining of discrimination;

B. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

C. Awarding Plaintiff punitive damages;

D. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

E. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices and conduct.

Dated: Rhinebeck, New York
August 10, 2022

*Nathaniel K Charny*
_____
Nathaniel K. Charny (NC 5664)
H. Joseph Cronen (HC 4814)
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York 12572
T - (845) 876-7500
F - (845) 876-7501
ncharny@charnywheeler.com
jcronen@charnywheeler.com

Attorneys for Plaintiff